# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

GRISELDA MENDOZA GOMEZ,

      Plaintiff,

    v.

THRIVE LIFESTYLE SERVICES, LLC,

      Defendant.

Case No. 3:12-cv-00766 -ST

**FINDINGS AND RECOMMENDATIONS**

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Griselda Mendoza Gomez ("Gomez"), a Mexican/Hispanic woman who became a United States Citizen in 2007, was employed by defendant, Thrive Lifestyle Services, LLC ("Thrive"), as a housekeeper until her termination on April 30, 2010.  Representing herself, she filed this lawsuit on August 30, 2012, alleging claims for employment discrimination under both federal and state law based on race, national origin, and citizenship against Thrive.[1]  On June 8,

---

[1] Gomez alleged in the original Complaint and First Amended Complaint (docket #35) that she "filed a complaint with the Oregon Bureau of Labor and Industries (BOLI) that constituted a joint filing with the Equal Employment Opportunity Commission (EEOC) . . . . contain[ing] Title VII national origin discrimination claims, as well as the citizenship and injured worker discrimination claims."  Complaint, ¶ 9; First Amended Complaint, ¶ 8.  She did not make a similar allegation in the operative Second Amended Complaint (docket #42).  Thrive asserts as an affirmative defense that that Gomez's claims fall outside the statute of limitations (docket #46, ¶ 68).  However, there is no record of when Gomez filed her administrative complaint or when BOLI issued a "right-to-sue" letter, and Thrive does not present a statute of limitations argument in its Motion for Summary Judgment.  Thus, the court cannot determine whether Gomez filed this lawsuit within the applicable statute of limitations.

2012, this court appointed *pro bono* counsel for Gomez for the limited purpose of responding to Thrive's motion to dismiss (dockets #7 & #11). With the assistance of *pro bono* counsel, Gomez filed an Amended Complaint (docket #35) and, in response to another motion to dismiss (docket #36), a Second Amended Complaint (docket #42) alleging citizenship discrimination in violation of 42 USC § 1981 (First Claim), workers' compensation discrimination in violation of ORS 659A.040 (Second Claim), and wrongful discharge (Third Claim). This court then terminated *pro bono* counsel (docket #44), and Thrive filed an Answer to the Second Amended Complaint on November 14, 2012 (docket #46). Since all initial case deadlines have expired, a new case schedule was set on September 20, 2013 (docket #57). Those deadlines were extended several times (dockets #62, #76, #97).

On May 14, 2014, Thrive filed a Motion for Imposition of Sanctions (docket #106), followed on May 22, 2014, by a Motion for Summary Judgment (docket #113). Gomez has not filed any response to these motions.

## FINDINGS

Based on Gomez's failure to cooperate and comply with this court's two discovery orders, Thrive seeks sanctions against her by dismissing this action. In addition, Thrive seeks summary judgment in its favor on all claims. Granting either motion will terminate this case in Thrive's favor.

### I.    Motion for Sanctions

Gomez has not fully cooperated with Thrive's repeated attempts to obtain discovery from her. Thrive submitted various discovery requests to her in August and November 2013 with cover letters in both English and Spanish explaining the 30-day deadline for a response and

follow-up letters and telephone calls.  Keating Decl. (docket #108), ¶¶ 5-7.[2]  Gomez finally

provided documents, but Thrive deemed her response to be insufficient and asked her to

supplement her production of documents.  *Id*, ¶¶ 8-9.

Between August 2013 and February 2014, Thrive also had difficulty scheduling Gomez's

deposition.  *Id*, ¶ 10.  On January 15, 2014, this court granted Thrive's motion to compel

Gomez's deposition (docket #68).  During her deposition, Gomez agreed to produce several

additional documents, but failed to do so, requiring Thrive to file its first motion to compel

discovery on February 26, 2014 (docket #78).  *Id*, ¶¶ 11-12.  This court granted that motion and

ordered Gomez to produce the requested documents and answer the pending interrogatories

(docket #84).  Gomez then produced more documents (docket #87).  *Id*, ¶ 13.

Because the documents were unresponsive to most of Thrive's requests and Gomez still

had not yet answered the interrogatories, Thrive filed a second motion to compel on April 2,

2014 (docket #90).  *Id*, ¶ 14.  The court granted that motion and ordered Gomez to answer

interrogatories, produce certain documents and execute an authorization to release her medical

records by May 8, 2014, and also warned that her failure to comply with the Order will result in

sanctions imposed against her (docket #103).  Thrive again advised Gomez by email of her

obligation to provide the documents or respond that they did not exist by the deadline set by the

court.  Keating Decl., ¶¶ 14-15.  Gomez did provide additional documents on May 9, 2014, but

never answered the interrogatories.  *Id*, ¶¶ 16, 19.  Thrive also complains that Gomez signed an

authorization to disclose her medical records, but failed to initial which records could be

released, rendering the authorization useless.  *Id*, ¶ 17.

---

[2] The parties have submitted documents as various attachments.  Citations to declarations and depositions are
identified by the last name of the declarant or deponent and citations are to the paragraph(s) of the declaration or the
page(s) of the deposition transcript.

If a party fails to comply with a discovery order, FRCP 37(b)(2)(A) allows the court to impose sanctions against the party, including dismissal of the action. However, such a severe sanction is justified only by the disobedient party's "willfulness, bad faith, and fault." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F3d 1091, 1096 (9th Cir 2006) (citation omitted). In determining whether case-dispositive sanctions are just, the court considers five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id* (internal quotations and citation omitted).

If a court order is violated, as here, "the first two factors support sanctions and the fourth factor cuts against a default." *Adriana Int'l. Corp. v. Thoeren*, 913 F2d 1406, 1412 (9th Cir 1990). Thus, the third and fifth factors are the most critical. With respect to the third factor, a defendant is prejudiced "if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Id* (citation omitted). The court can infer prejudice from "loss of evidence and memory," or by the "costs or burdens of litigation." *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F3d 1217, 1227-28 (9th Cir 2006). The fifth factor requires a court to "consider less alternative sanctions and discuss them before actually dismissing a case." *Adriana*, 913 F2d at 1413 (citation omitted). *See also Reyes v. Watson*, 265 Fed App'x 468 (9th Cir 2008) (upholding default judgment when the district court warned plaintiff in six separate orders that sanctions, including entry of default, would result).

Gomez did not fully comply with two of the court's discovery orders. However, she did partially comply by producing most requested documents and appearing for her deposition. Why she failed to fully comply is not clear. As Thrive contends, perhaps she has little interest in

resolving this case and merely intends to delay and harass.  Equally plausible, however, is

Gomez's inability to comply due to her confusion over the discovery rules or her limited English

proficiency.  For example, given the lack of clear instructions on the medical release form, she

may not have understood the need to release specific records with her initials.

More importantly, however, this court is not persuaded that Thrive has been prejudiced

by Gomez's failure to produce all documents requested or answer the interrogatories.  Thrive has

taken Gomez's deposition to obtain that same information that it would have obtained through

answers to interrogatories.  In addition, Thrive has obtained many documents from Gomez and

elsewhere.  More telling, it has filed a motion for summary judgment supported by several

declarations and exhibits, including excerpts from Gomez's deposition.  Although Thrive claims

that exculpating facts, witnesses, and other information may no longer be available to assist its

case, it has not pointed to any such specific evidence.

Therefore, this court concludes that Gomez's conduct does not rise to the level necessary

to justify dismissal of her case.  Instead, this court should rule on the merits as presented by

Thrive's summary judgment motion.

## II.    <u>Motion for Summary Judgment</u>

### A.    <u>Legal Standards</u>

Summary judgment may be granted if "no genuine issue" exists regarding any material

fact and "the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  The moving

party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317,

323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the

pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing

FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but

only determine[] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989) (citation omitted).  The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn from the facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations omitted).

### B.    Undisputed Facts

Despite being contacted by email in an attempt to confer about Thrive's motion for summary judgment and then being served with the motion, Gomez has not responded.  Pursuant to this court's Notice to Self-Represented Litigants (docket #4), Gomez was warned to follow all of the Federal Rules of Civil Procedure, as well as this court's Local Rules of Practice and Procedure which are available on the court's website.  Pursuant to FRCP 56(e), if a party "fails to properly address  another party's assertion of fact as required by Rule 56(c)," then the court may:

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting
> materials — including the facts considered undisputed — show
> that the movant is entitled to it; or
> (4) issue any other appropriate order.

Although Gomez has contacted the court in the past with questions or requests for more time, she has not done so here.  Therefore, this court will accept the facts submitted by Thrive as undisputed for purposes of its motion.

In addition, Thrive issued Requests for Admissions to Gomez on November 12, 2013, translated into Spanish with an accompanying letter explaining the 30-day deadline, to which Gomez has not responded.  Keating Decl. II (docket #114), ¶ 5 & Ex. A.  Therefore, pursuant to FRCP 36(a)(3), those requests are deemed admitted.

Accordingly, this court incorporates by reference the Statement of Facts set forth in Thrive's motion (docket #113).

C.    **§ 1981 Claim (First Claim)**

The First Claim alleges that Thrive violated 42 USC § 1981 by terminating her based on her status as a United States citizen.  That statute prohibits discrimination in the "benefits, privileges, terms and conditions" of employment.  *Metoyer v. Chassman*, 504 F3d 919, 935 (9th Cir 2007) (citation omitted).  When analyzing § 1981 claims, the court applies "the same legal principles as those applicable in a Title VII disparate treatment case."  *Id* at 930, quoting *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F3d 840, 850 (9th Cir 2004).  To prove Title VII and § 1981 claims, a plaintiff may produce "direct or circumstantial evidence demonstrating that a discriminatory reason more likely that not motivated the employer."  *Id* at 931 (alteration and citation omitted).

1.    **Direct Evidence**

Direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision."  *Enlow v. Salem–Keizer Yellow Cab Co., Inc.*, 389 F3d 802, 812 (9th Cir 2004) (emphasis omitted), quoting *Walton v. McDonnell Douglas Corp.*, 167 F3d 423, 426 (8th Cir 1999).  "Direct evidence typically consists of clearly sexist,

racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co., LLC*, 413 F3d 1090, 1095 (9th Cir 2005) (citations omitted).  However, a "stray remark" that is "uttered in an ambivalent manner and [is] not tied directly to [the plaintiff]'s termination" is insufficient to create an inference of discriminatory motive.  *Nesbit v. Pepsico, Inc.*, 994 F2d 703, 705 (9th Cir 1993), citing *Merrick v. Farmers Ins. Grp.*, 892 F2d 1434, 1438 (9th Cir 1990).

Gomez alleges that her supervisor, Maria Uribe ("Uribe"), knowing that Gomez was a United States citizen, told her and others that "American are lazy," are "no good," "do not work well," and only wanted unemployment, expressing a preference for undocumented workers. Second Amended Complaint, ¶¶ 15-16, 18-19.  Because of those comments, Gomez felt Uribe treated her differently because she was an American citizen.  Keating Decl. II, Ex. B ("Gomez Depo."), p. 93.

Uribe denies knowing Gomez's citizenship and does not recall making the alleged statements.  Uribe Decl. (docket #116), ¶ 21.  In fact, as a result of the court admitting Thrive's Request for Admissions, Gomez has effectively admitted that she never heard Uribe making these statements.  Keating Decl. II, ¶ 5(r) & Ex. A, p. 7.  A former Thrive employee did hear Uribe telling colleagues from S.W. MERP, a maintenance company owned by the same company as Thrive, that Americans were lazy, in regard to a Caucasian-American employee of S.W. MERP, Ikaka Macy ("Ikaka").  Johnson Decl. (docket #115), ¶ 10.  When Johnson investigated the comment in a meeting with Uribe and Ikaka, she learned that Uribe made the comment in defense of Thrive employees, and both Uribe and Ikaka considered the statement congenial.  *Id.*

Even if Uribe made those statements to Gomez, they were general in nature and did not reference any employment decision concerning Gomez.  *See Nesbit*, 994 F2d at 705 (alteration in

original) (supervisor's comment that "[w]e don't necessarily like grey hair" was weak circumstantial evidence of discriminatory animus on the basis of age); *Merrick*, 892 F2d at 1438 (hiring executive's comment that he chose "a bright, intelligent, knowledgeable young man" over appellant was merely a stray remark and insufficient by itself to establish age discrimination). *But cf. Cordova v. State Farm Ins. Cos.*, 124 F3d 1145, 1148-49 (9th Cir 1997) (decision-maker calling employee a "dumb Mexican" is strong evidence of discriminatory animus).

Moreover, Uribe had no disciplinary authority over Gomez. Gomez believed Thrive fired her and other employees based on Uribe's opinion. Gomez Depo., pp. 103-04 ("She wouldn't tell someone face-to-face, you're fired. She would just insinuate that this person's going to be the next one that would be fired, and, effectively, that person would be fired."). But Thrive's employee records prove otherwise. Uribe lacked authority to hire and fire employees, receive employment applications or otherwise engage in hiring decisions, and was not involved in the decision to terminate Gomez. Uribe Decl.,¶¶ 18-19; Johnson Decl., ¶¶ 9, 34-35; Keating Decl. II, Ex. A, p. 3. And Uribe did not ask Johnson to fire Gomez. Johnson Decl., ¶ 34; Uribe Decl., ¶ 20. To the contrary, Uribe told Johnson about Gomez yelling at her in front of building residents on April 23, 2010, only after Johnson questioned Uribe about the incident. Johnson Decl., ¶ 31; Uribe Decl., ¶ 17. Therefore, even if Uribe's comments indicate a discriminatory attitude, no reasonable fact-finder could conclude that her animus affected the firing of Gomez. *DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 879 F2d 459, 467-68 (9th Cir 1989) (affirming summary judgment for employer because plaintiff failed to demonstrate a nexus between an agent's racially discriminatory remark and the plaintiff's termination).

Thus, the isolated comments by Uribe, a non-decisionmaker, are not direct evidence of a discriminatory motivation by Thrive.

## 2.    **Indirect Evidence**

Absent direct evidence of discrimination, the court applies the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 US 792, 802 (1973).  *Metoyer*, 504 F3d at 930-31.  Under that framework, the plaintiff must first establish a *prima facie* case of discrimination by proving that he or she:  (1) belongs to a protected class, (2) performed his or her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated employees who do not belong to the same protected class.  *Cornwell v. Electra Cent. Credit Union*, 439 F3d 1018, 1028 (9th Cir 2006), citing *McDonnell Douglas Corp.*, 411 US at 802.  If the plaintiff makes out her *prima facie* case, then the burden "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory [or retaliatory] conduct."  *Vasquez v. Cnty. of L.A.*, 349 F3d 634, 640 (9th Cir 2003).  Finally, at the third step, if the employer articulates a legitimate reason for its action, "the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required . . . under  Fed.R.Civ.P. 56(c)."  *Cornwell*, 439 F3d at 1028 (citations and internal quotation marks omitted).

Although Gomez belongs to a protected class of United States citizens, she has not submitted any evidence to prove that she performed her job satisfactorily and was treated differently than similarly situated employees who are not United States citizens.

Based on the only evidence in the record, Gomez was terminated for insubordination, not based on any discriminatory animus.  She and Uribe both started as housekeepers, but she resented Uribe's promotion over her and made every effort to undermine Uribe's authority.

Johnson Decl., ¶¶ 26, 30- 31; Gomez Depo., pp. 42-45; Uribe Decl., ¶¶ 1, 10-12.  Her termination ultimately resulted from an act of insubordination when she yelled at Uribe over the telephone in public because she did not want to clean an additional room.  Johnson Decl., ¶¶ 31- 32 & Ex. E; Uribe Decl., ¶¶ 14-18; Rogers Decl., ¶ 7.  In fact, she labeled Uribe as "very problematic" and instead viewed other employers as filling the supervisor role.  Gomez Depo., pp. 35-37, 40.  Gomez also performed her job duties unsatisfactorily and was uncooperative with her superiors, as evidenced by her job evaluations.  Johnson Decl., ¶¶ 6, 25, 28 & Exs. C & D; Rogers Decl. (docket #117), ¶ 4.  Gomez has not disputed this evidence.

In addition to the comments made by Uribe, Gomez alleges that through Uribe, Thrive hired undocumented aliens as employees and terminated employees who threatened to report Thrive's practices to immigration services.  Second Amended Complaint, ¶¶ 9-22.  Gomez concedes that no one else at Thrive discriminated against her because she was an American citizen.  Gomez Depo., p. 101; Keating Decl. II, Ex. A, p. 7.

Even if Uribe had access to employment applications, Gomez offers no evidence to establish that the applications identified the applicants' place of citizenship, such that Uribe could have possibly discriminated against them.  Gomez Depo., p.72.  Gomez concedes that she did not read the names on any of the applications or identify the applicants' places of citizenship and did not witness Uribe disposing of applications.  *Id*.

Moreover, Gomez has offered no evidence that Thrive preferred non-American employees and undocumented workers over American employees.  Although Gomez alleged that she was replaced with an undocumented worker, Johnson told the Oregon Bureau of Labor and Industry ("BOLI") investigators that Thrive had hired another worker "with appropriate I9 documentation" to replace Gomez (docket #87, p. 44).  Instead, Thrive has submitted evidence

that it does a thorough background check of each job applicant and has denied employment to

applicants because they were unable to prove their legal working status.  Johnson Decl., ¶ 13.

 As additional evidence of discriminatory animus, Gomez testified that Uribe changed her

work schedule to start one hour later.  Gomez Depo., pp. 128-131.  However, Thrive moderately

changed, but did not reduce, all the housekeepers' schedules because its building contracts

changed.  Uribe Decl., ¶ 13; Johnson Decl., ¶ 29.  Such a slight modification to her work

schedule is not indicative of discrimination.

 None of the material facts alleged in the Second Amended Complaint is supported by

evidence.  Based on the lack of a genuine issue of material fact, Thrive's motion for summary

judgment should be granted on the § 1981 claim.

  **D.**  **ORS 659A.040 Claim (Second Claim)**

 The Second Claim alleges that Thrive violated ORS 659A.040(1) by taking adverse

actions against Gomez on the basis that she applied for workers' compensation benefits.

To prevail on this claim, Gomez must prove that:  (1) she invoked the workers' compensation

system; (2) Thrive discriminated against her in the tenure, terms, or conditions of her

employment; and (3) the discrimination resulted because she invoked the workers' compensation

system.  *Williams v. Freightliner, LLC*, 196 Or App 83, 89, 100 P3d 1117, 1121 (2004) (citation

omitted).

 Gomez filed for workers' compensation benefits after suffering an injury in December

2009.  Johnson Decl., ¶¶ 15, 17.  However, no evidence links any discriminatory action by

Thrive to Gomez's invocation of the worker's compensation system.  Instead, Thrive

accommodated Gomez's medical needs by modifying her job duties so that they were less

physically demanding.  *Id*, ¶ 19; Rogers Decl., ¶ 6; Keating Decl. II, Ex. A, p. 4.  During this

time, Uribe took no part in supervising Gomez or assigning her tasks.  Johnson Decl., ¶ 20; Uribe

Decl., ¶¶ 8-9; Keating Decl. II, Ex. A, p. 5.  Instead, Johnson exclusively supervised Gomez, saw

her disregarding her doctor's instructions, and immediately corrected her.  Johnson Decl., ¶¶ 19,

21-23.  Johnson also refused Gomez's requests to return to her assigned building until she

provided the appropriate documentation from her doctor releasing her to full duty.  *Id*, ¶ 24;

Gomez Depo., p. 91.  By taking these precautions, Thrive did not discriminate against Gomez by

assigning her to duties that exceeded her medical limitations.

Gomez has presented no evidence that Thrive terminated her because he sought workers'

compensation benefits.  In fact, Gomez testified that she does not believe that she was fired for

filing a workers' compensation claim, but instead "due to everything all together."  Gomez

Depo., pp. 92-94.

Thus, Gomez cannot prove that any adverse employment action was taken because she

invoked the workers' compensation system.

### E.    <u>Wrongful Discharge (Third Claim)</u>

The Third Claim alleges that Thrive terminated Gomez because she was a United States

citizen which is a "socially undesirable motive."  Second Amended Complaint, ¶¶ 49, 58-60.[3]

Generally, an employer may fire an at-will employee at any time and for any reason,

unless doing so violates a contractual, statutory, or constitutional requirement.  *Simpson v. W.*

*Graphics Corp.*, 293 Or 96, 99, 643 P2d 1276, 1278 (1982).  Oregon law recognizes two narrow

exceptions to this rule:  (1) discharge for exercising a job-related statutory right, and (2)

discharge for complying with a public duty.  *Patton v. J.C. Penney Co.*, 301 Or 117, 120-21, 719

P2d 854, 856-57 (Or 1986), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or

532, 301 P2d 841 (1995).

---

[3] Paragraphs 60 and 61 are mistakenly numbered as 49 and 50.

To succeed on a wrongful discharge claim, Gomez must show that she engaged in protected activity and that the protected activity was a substantial factor in the decision to terminate her. *Holien v. Sears Roebuck and Co.*, 298 Or 76, 90 n5, 689 P2d 1292, 1299 n5 (1984) (citations omitted). In other words, she must establish a causal connection between the exercise of her employment related right (American citizenship) and the adverse employment action (discharge). *Pascoe v. Mentor Graphics Corp.*, 199 F Supp2d 1034, 1053 (D Or 2001) (citation omitted).

This claim suffers from two fatal flaws. First, Gomez has not produced sufficient evidence to establish a causal connection between her termination and her American citizenship. As discussed above, she was terminated for a legitimate, non-discriminatory reason of insubordination. No facts in the record link her termination to her American citizenship, much less establish that her citizenship was a "substantial factor" in her termination.

Second, the tort of wrongful discharge is not available if an existing statutory remedy fully vindicates the public's interest. *Neighorn v. Quest Health* Care, 870 F Supp2d 1069, 1106-07 (D Or 2012) (holding that a "whistleblowing" under ORS 659A.199 precluded a wrongful discharge claim). When a plaintiff's wrongful discharge claim is premised on facts that implicate 42 USC § 1981, the claim is precluded by an adequate statutory remedy. *See, e.g.*, *Navarette v. Nike, Inc.*, No. 05-1827-AS, 2007 WL 221865, at *2 (D Or Jan. 26, 2007), *aff'd* 332 Fed App'x 405 (9th Cir 2009). Gomez's wrongful discharge claim is premised on the same facts and circumstances that she alleged under her § 1981 claim, namely that she was terminated because she was a United States Citizen. Since § 1981 provides remedies that are even more comprehensive than that available through a successful wrongful discharge claim, such as

attorney fees, an adequate statutory remedy exists and is available to Gomez.  Accordingly, the wrongful discharge claim is precluded as a matter of law.

## RECOMMENDATIONS

For the reasons set forth above, defendant's Motion for Imposition of Sanctions (docket #106) should be DENIED, defendant's Summary Judgment Motion (docket #113) should be GRANTED, and a judgment should be entered in favor of defendant dismissing this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Monday, August 04, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED July 18, 2014.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge